UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

BRYANT JOHNSON,

                         Petitioner,

    -against-

PAUL ANNETTS, Superintendent, Downstate
Correctional Facility,

                         Respondent.

-------------------------------------------------------- X

**MEMORANDUM AND ORDER OF DISMISSAL**

05 CV 4504 (BMC)

**COGAN, District Judge.**

Petitioner was convicted in state court of attempted murder in the second degree for shooting the victim, Antoine Scott, in the chest. Petitioner's *habeas corpus* petition originally sought review of his conviction on one ground: that the state trial court had erred in requiring him to use a peremptory challenge to strike a prospective juror instead of sustaining a challenge for cause. Subsequent to filing this petition, petitioner obtained a stay so that he could exhaust an ineffective assistance of appellate counsel claim in collateral (*coram nobis*) proceedings in state court. He has now exhausted that claim and the petition is before me for decision. I hold that neither of the claims have merit and the petition is therefore DISMISSED.

## I. Failure to Grant Challenge for Cause to Prospective Juror

I have reviewed the *voir dire* involving the challenged juror and I do not believe that petitioner demonstrated cause at trial to strike the juror from the panel. When initially questioned, the prospective juror was equivocal as to whether he would have difficulty accepting petitioner's theory of the case (self-defense), but when questioned

further by counsel and by the Court, the Juror agreed that he could be fair and would follow the Court's instructions on that defense. It was within the trial judge's discretion, based on observations of the witness and consideration of the answers to the questioning, to determine whether cause existed or not.

More importantly, even if there had been cause, there is no constitutional error because petitioner used a peremptory challenge to strike the prospective juror. The law is well settled on this point. If a defendant has a peremptory strike and uses it to strike a juror who he had unsuccessfully challenged for cause, no ground for *habeas corpus* relief exists. This is because the jury that ultimately heard the case had no biased members on it. There is simply no constitutional right to peremptory challenges.

> When considering a Sixth Amendment claim of jury bias, we must review only those jurors who actually sat on the allegedly impartial jury, and not those jurors who were dismissed. Even where a petitioner claims that the trial court improperly failed to remove a juror for cause and thereby forced him to use a peremptory challenge, a petitioner must focus his claim not on the challenged jurors who were removed by peremptory strike, but on the jurors who ultimately sat at the trial. So long as the jury that sat was impartial, "the loss of a peremptory challenge [does not] constitute[ ] a violation of the constitutional right to an impartial jury" ... .

U.S. ex rel. Walker v. Carter, No. 97 Civ. 8345, 2000 WL 263702, *4 (N.D.Ill. 2000) (quoting Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278(1988)). See also U.S. v. Perez, 387 F.3d 201, 207 (2d Cir. 2004).

## II. Ineffective Assistance of Appellate Counsel

In his state court petition for a writ of *coram nobis*, petitioner asserted ineffectiveness of appellate counsel based upon appellate counsel's failure to raise points on direct appeal that petitioner believes should have been raised. Petitioner raises that same claim here. The points that he contends appellate counsel should have raised are:

(1) the trial court improperly advised the jury that petitioner was claiming self-defense and would testify, and thereby "foisted" self-defense upon him, requiring him to admit that he shot the victim; and (2) the trial court failed to properly remind the jury as to its responsibilities before two of the recesses during trial.

A. Governing Law

At the outset, it should be noted that the merits of these claims are before me only derivatively. That is, petitioner's sole claim here, as in his *coram nobis* proceeding, is that appellate counsel was ineffective for not raising the two points listed above on direct appeal. From that posture, both as a matter of generally applicable principles and on the facts of this case, petitioner faces a high threshold to obtain *habeas corpus* relief. This high threshold exists for three reasons.

First, claims of ineffective assistance of appellate counsel are analyzed under the demanding criteria set forth in Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984). Petitioner must show that counsel's representation "fell below an 'objective standard of reasonableness' judged by 'prevailing professional norms.'" Id. See also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir.1998). Petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In applying this test, I am to be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance unless proven otherwise. Strickland, 466 U.S. at 689. Lastly, the law is clear that when preparing an appeal, an attorney is not required to raise every non-frivolous argument even if asked to do so by his client. Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983) (holding that "[e]xperienced advocates

(1) the trial court improperly advised the jury that petitioner was claiming self-defense and would testify, and thereby "foisted" self-defense upon him, requiring him to admit that he shot the victim; and (2) the trial court failed to properly remind the jury as to its responsibilities before two of the recesses during trial.

A. Governing Law

At the outset, it should be noted that the merits of these claims are before me only derivatively. That is, petitioner's sole claim here, as in his *coram nobis* proceeding, is that appellate counsel was ineffective for not raising the two points listed above on direct appeal. From that posture, both as a matter of generally applicable principles and on the facts of this case, petitioner faces a high threshold to obtain *habeas corpus* relief. This high threshold exists for three reasons.

First, claims of ineffective assistance of appellate counsel are analyzed under the demanding criteria set forth in Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984). Petitioner must show that counsel's representation "fell below an 'objective standard of reasonableness' judged by 'prevailing professional norms.'" Id. See also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir.1998). Petitioner must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In applying this test, I am to be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance unless proven otherwise. Strickland, 466 U.S. at 689. Lastly, the law is clear that when preparing an appeal, an attorney is not required to raise every non-frivolous argument even if asked to do so by his client. Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308 (1983) (holding that "[e]xperienced advocates

since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues").

On top of starting with this difficult standard, petitioner is next faced with the state *coram nobis* court's rejection of his ineffective assistance of appellate counsel claim on the merits. (The state court gave no analysis, but plainly stated that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel," and cited Jones v. Barnes, supra.) That rejection on the merits triggers that portion of the Anti-Terrorism and Effective Death Penalty Act of 1996 which allows issuance of a writ of *habeas corpus* only if the state court's ruling on the merits was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. §2254(d)(1).

Third, and as significant a hurdle as the first two, is that the two grounds that petitioner contends his appellate counsel should have raised had not been preserved for appeal. Trial counsel had never objected to the trial court's conduct in failing to fully admonish the jury during breaks and informing the jury that petition was asserting self-defense and would be testifying. Petitioner is therefore asking me to hold that appellate counsel was constitutionally ineffective for choosing not to raise points of error that had not been preserved below. This is theoretically possible, but extraordinarily difficult to show.

This last point illustrates the attenuated nature of petitioner's claims. We are twice removed from the commission of error that petitioner is asserting. Petitioner's most fundamental claim might have been ineffective assistance of trial counsel for not

4

objecting to the rulings that he now challenges. However, that claim is both unexhausted and procedurally defaulted, because (1) the only avenue to raise it was in his direct appeal; (2) he did not raise it there; and (3) his ability to raise it in a state court proceeding is gone. Although petitioner contended in his state *coram nobis* petition that his appellate counsel was ineffective, he did not assert as a ground for that claim that appellate counsel should have raised ineffectiveness of trial counsel. Having backed himself into this corner, petitioner in this proceeding is raising the same limited claim as in his state *coram nobis* proceeding, but with the additional burden of the deferential AEDPA standard.

B. Application

Against this backdrop, I do not see how petitioner can qualify for *habeas corpus* relief. Starting at the top, he cites no Supreme Court authority, other than the general principles set forth in Strickland. He contends that the state court decision denying his *coram nobis* petition was either contrary to Strickland or an unreasonable application thereof. While Strickland sets out general principals for measuring the constitutional adequacy of counsel's performance, it encompasses a wide variety of errors and omissions that do not rise to a constitutional violation and is factually distinguishable from the instant case. Petitioner failed to identify any "materially indistinguishable" Supreme Court cases that lead to a different result than the state court reached here. I similarly have found no Supreme Court authority that meets this criterion for AEDPA purposes. Therefore, the *coram nobis* court's decision is not contrary to Strickland.

Petitioner's "unreasonable application" argument fails to even rely on Strickland and is based wholly on state law. He argues that AEDPA is satisfied because "the same

5

panel of [state] Appellate Judges who decided the petitioner's direct appeal, and who denied his writ of error *coram nobis*, reversed the conviction [of a different petitioner] in the interest of justice in People v. Cotterell, a case which presented virtually indistinguishable claims." That misses the point. The question is not whether the state court's decision in petitioner's case is consistent with its own prior decisions in similar cases. The question is whether the state court applied the Strickland analysis in an "objectively unreasonable manner." See Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432 (2005). Moreover, given the broad case-by-case nature of the Strickland analysis, the state court had significant leeway in determining the *coram nobis* petition. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004). A comparison of petitioner's case to Strickland shows no similarity, neither factually nor in the application of legal principles.

Petitioner strongly believes that the application of the Strickland test leaves no doubt as to the outcome of his ineffective assistance of appellate counsel claim. I cannot agree. Jones makes it clear that the Constitution does not compel appellate counsel to press every non-frivolous argument – even if the client urges appellate counsel to do so, which is not the case here. Petitioner criticizes appellate counsel, denigrating the jury challenge claim that appellate counsel raised (and which petitioner at the time urged him to raise) in comparison to his newly asserted claims. However, all of these claims, both the ones that were raised and the ones petitioner argues should have been raised, had no merit. Especially considering that the claims petitioner now says should have been raised were not preserved for appellate review, I cannot fault appellate counsel for choosing, in consultation with petitioner, which of a number of very weak claims to raise.

This brings us to the merits of petitioner's underlying claims of error. Petitioner argues that the trial judge erred in introducing the case to the venire as follows:

> It's charged that on June 30, 2000, the defendant on trial approached a man known as Antoine Scott or Antoine Edmonson and attempted to kill him by firing one shot at him. He was not killed. He will be testifying in court.
>
> The defense here, and it's a very strong defense, strongly asserted defense, is that defendant acted in self-defense.

This statement was part of the Court's introductory remarks, briefly summarizing the case for the panel so they would know what kind of case it was. Petitioner asserts that this statement deprived him of the ability to assert that he was not the one who shot the victim. In petitioner's words, "the trial court erred in removing from the jury's consideration the foremost element of the crimes charged," i.e., who shot the victim.

Petitioner has ignored, however, why the trial judge offered this synopsis to the venire. Prior to bringing the panel into the courtroom, the trial judge and the lawyers engaged in a lengthy pretrial hearing in which the trial judge and the lawyers discussed the case. This included both an evidentiary suppression hearing and motions *in limine*. During the colloquy on the motions *in limine*, petitioner's trial counsel left no doubt that the defense at trial was going to be self-defense. "Basically, Your Honor, it's a self-defense case." He asserted his need to introduce specific credibility evidence against the prosecution's witnesses in order to establish self-defense. Petitioner's counsel went on at considerable length to describe how the victim and petitioner had been friends, how the victim was a gang member, and that there was a history of "bad blood" between them. The Court agreed to admit evidence concerning the victim's gang membership to support petitioner's claim that he was in fear of the victim, thus supporting self-defense, over the prosecutor's objection:

7

> THE COURT [to the prosecutor]: What do you think they [gang members] do? They have signed contracts or carry a membership card? If somebody, in good faith, believes that somebody else carries a gun around, or weapons, is dangerous, this goes to the viability of a self-defense claim.

There were numerous other remarks in this pre-empanelment argument on the motions *in limine* which showed beyond doubt that petitioner was basing his case on self-defense.

As if this were not enough to render frivolous petitioner's claim of trial court error, petitioner was arrested in possession of the weapon and was identified by the victim. Petitioner, in neither his proceedings in state court nor here, discloses what his theory of defense would have been if not self-defense. His trial attorney was taking the most viable path in asserting self-defense, and the trial court in no way "foisted" that defense on petitioner.[1]

Petitioner's second underlying claim of error is that the trial court, at the beginning of two recesses during trial, failed to properly admonish the jurors concerning discussing the case or visiting the scene of the crime. There is no dispute that the trial judge gave an extensive and adequate admonition on this subject at the commencement of the trial and an abbreviated admonition during one of the two breaks about which petitioner complains.

If this issue had been preserved at trial and was before me as a due process claim, I would reject it. The Second Circuit rejected such a claim long ago:

---

[1] Petitioner also asserts that the trial court effectively coerced him to testify by mentioning to the jury that although petitioner did not have to testify, he would. There is an obvious typographical error in the trial court's question to defense counsel before impaneling the jury – "Is your client going to waive his Muslim rights?" should read: "Is your client going to waive his Fifth Amendment rights?" Defense counsel answered affirmatively, and indeed, for defendant to have maintained self-defense without testifying would have been futile.

8

> It has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded.

U.S. v. Viale, 312 F.2d 595, 602 (2d Cir. 1963) (citation omitted). Petitioner's attempt to assert this point under the Sixth Amendment, alleging ineffective assistance of appellate counsel for not raising it, is frivolous.

Petitioner's claims of error, both standing alone and as derivatively asserted through an ineffective assistance of appellate counsel claim, fall far short of the Strickland standard. It suffices to note that petitioner has to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It cannot seriously be argued that the jury would have acquitted petitioner if the Court had fully admonished the jury during the recesses, for there is no evidence that any juror did anything improper despite the abbreviation or absence of the admonition. Similarly, it cannot seriously be argued that petitioner would have prevailed had he not taken the stand and asserted self-defense, since he was apprehended with the weapon in-hand and the victim testified that petitioner was the shooter. Since Jones does not require appellate counsel to raise every non-frivolous argument even if asked to do so by his client, it certainly does not require appellate counsel to raise frivolous arguments.

## CONCLUSION

The petition is DISMISSED. Because there is no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from the

9

order would not be taken in good faith and therefore *in forma pauperis* is denied for the purpose of an appeal.

**The Clerk of the Court is directed to mail a copy of this Memorandum and Order of Dismissal to petitioner** *pro se*.

SO ORDERED.                                /s/(BMC)
_____
                                                  U.S.D.J.

Dated: Brooklyn, New York
       April 25, 2007